PEOPLE v WHITESIDE

Docket No. 87630. Argued November 9, 1990 (Calendar No. 8). Decided April 29, 1991. Certiorari denied by the Supreme Court of the United States on October 7, 1991, 502 US — ; 116 L Ed 2d 204 (1991).

Joseph W. Whiteside pled guilty in the Genesee Circuit Court, Donald R. Freeman, J., of breaking and entering an occupied dwelling with intent to commit larceny. After posting bail, the defendant was released under an order delaying sentencing, conditioned upon participation in a private rehabilitation program for substance abusers. Thereafter, he was sentenced to probation, subsequently violated probation, and ultimately was sentenced for the underlying conviction and awarded credit for time spent in the county jail. The Court of Appeals, MICHAEL J. KELLY, P.J., and SAWYER and CAVANAGH, JJ., affirmed in part in an unpublished opinion per curiam, ruling that the circuit court erred in failing to additionally award credit for the time spent as a resident in the drug treatment program as a condition of probation (Docket No. 114631). The panel certified that its decision conflicts with People v Morin, 159 Mich App 582 (1987). The people appeal.

In an opinion by Justice GRIFFIN, joined by Chief Justice CAVANAGH and Justices LEVIN, BRICKLEY, BOYLE, and RILEY, the Supreme Court held:

Neither MCL 769.11b; MSA 28.1083(2) nor the Double Jeopardy Clause requires the award of sentence credit for time spent as a resident participant in a private rehabilitation program as a condition of probation.

1. Probation and its conditions are a matter of grace, not of right, and rest in the sound discretion of the trial court. MCL 771.2; MSA 28.1133, the probation statute, authorizes the imposition of a number of specific conditions and confers upon the trial court broad discretion to impose other lawful conditions of probation as each case may require or warrant, and to determine when and if to revoke probation. If a probation order is revoked, the court may sentence the probationer in the same

REFERENCES

Am Jur 2d, Criminal Law § 548.
See the Index to Annotations under Sentence and Punishment.

manner and to the same penalty as if the probation order had never been made.

2. MCL 769.11b; MSA 28.1083(2), the sentence credit statute, provides that whenever a person is convicted of a crime and has served time in jail before sentencing because of being denied or unable to furnish bond, the person is entitled to credit against the sentence. The primary purpose of the credit statute is to equalize as far as possible the status of indigent persons with that of persons who can afford to furnish bail. An essential prerequisite to the award of sentence credit is a showing that presentence confinement was the result of the inability to post bond. In this case, the defendant did post bond. To the extent of any conflict, the probation revocation statute controls over the sentence credit statutes, and evinces a legislative intent to permit upon revocation of probation the imposition of full punishment absent consideration of any previously imposed condition of probation.

3. The Fifth Amendment's double jeopardy guarantee against multiple punishments for the same offense absolutely requires that punishments already extracted must be fully credited in imposing sentence upon a new conviction for the same offense. The constitutional guarantee not only safeguards against successive prosecutions for the same offense, but also protects against multiple punishments for the same offense. The interest which the Double Jeopardy Clause seeks to protect is limited to ensuring that the total punishment does not exceed that authorized by the Legislature and is a restriction on a court's ability to impose punishment in excess of legislative intent, not a limitation on the Legislature. Legislative intent is the beginning and end of the inquiry regarding whether multiple punishments constitute double jeopardy. In this case, whether double jeopardy protection requires the award of sentence credit for the probationary time claimed in the rehabilitation center turns on the meaning of the words "in jail" in the sentence credit statute when read in light of the probation revocation statute. A private rehabilitation center is not a jail as that term is commonly used and understood. The purpose of spending time in a rehabilitation center is for treatment and rehabilitation, rather than incarceration. Thus, the meaning of the term "jail" as used in the sentence credit statute, when read in light of the probation revocation statute, does not extend to or include participation in a private rehabilitation program, although required as a condition of probation.

Reversed and remanded.

Justice Mallett took no part in the decision of this case.

Sentences — Sentence Credit — Probation — Double Jeopardy.
Neither the sentence credit statute nor the Double Jeopardy Clause requires the award of sentence credit for time spent as a resident participant in a private rehabilitation program as a condition of probation (US Const, Am V, MCL 769.11b, 771.4; MSA 28.1083[2], 28.1134).

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *Robert E. Weiss,* Prosecuting Attorney, *Donald A. Kuebler,* Chief, Appellate Division, and *G. L. Christopherson,* Assistant Prosecuting Attorney, for the people.

*Joseph K. Sheeran* for the defendant.

Griffin, J. We must decide in this appeal whether a convicted criminal defendant, who is sentenced to prison after violating the terms of his probation, is entitled to sentence credit for time he spent in residence in a private drug treatment program as a condition of probation. Our answer turns on the construction and applicability of probation and sentence credit statutes,[1] as well as the constitutional guarantee against double jeopardy.[2] Because we conclude that the circuit court did not err in failing to award the claimed sentence credit under the circumstances of this case, we reverse the decision of the Court of Appeals.

I

On January 12, 1983, defendant Joseph Westley Whiteside was arrested and placed in the Genesee County Jail. He pled guilty and was convicted on March 10, 1983, of breaking and entering an occu-

[1] MCL 769.11b, 771.4; MSA 28.1083(2), 28.1134.
[2] US Const, Am V, which is applicable to the states through the Fourteenth Amendment. *Benton v Maryland,* 395 US 784; 89 S Ct 2056; 23 L Ed 2d 707 (1969).

pied dwelling with intent to commit larceny.[3] Defendant remained in the county jail until May 24, 1983, when he posted a $1,500 bond and was released under a circuit court order which delayed sentencing,[4] conditioned upon his participation in a private rehabilitation program for substance abusers operated by New Paths, Inc.

After he had been a resident in the program for a little over three months, the circuit judge held a hearing on September 8, 1983, and sentenced defendant to five years probation. In addition to other terms and conditions, the probation order required defendant to "[r]emain a participant in the New Paths, Inc. In-Residence Program . . . subject to rules, regulations and other controls of the duly authorized personnel of said program . . . ." Defendant continued to reside at the New Paths, Inc., facility until January 30, 1984, and completed the program on April 4, 1984.[5]

Later, but prior to expiration of the five-year probationary period, defendant violated the terms of his probation when he was charged with and convicted of committing another criminal offense.[6] After admitting at a hearing that he had violated

---

[3] MCL 750.110; MSA 28.305. As the result of a plea bargain, another charge, possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2), was dismissed.

[4] MCL 771.1(2); MSA 28.1131(2). The order delayed sentencing until September 8, 1983.

[5] After January 30, 1984, defendant participated on an "out patient" basis, as allowed by the rules of the program.

[6] Defendant was charged October 12, 1987, and subsequently pled guilty and was convicted of attempted breaking and entering an occupied dwelling with intent to commit larceny. MCL 750.92, 750.110; MSA 28.287, 28.305.

On February 11, 1988, defendant entered Rubicon/Odyssey House, another residential drug treatment program, where he remained for twenty days until he was brought before the circuit court on March 1, 1988, for violation of the probation order of September 8, 1983. He was incarcerated in the county jail from March 1 until April 6, 1988, when he was sentenced to prison for nine to fifteen

probation, defendant was resentenced for the underlying conviction to a prison term of nine to fifteen years. The trial court awarded credit against the sentence for 143 days served by defendant in the county jail.[7]

On appeal, the Court of Appeals ruled that the circuit court erred in failing to award credit also for the time defendant spent as a resident in the drug treatment program as a condition of probation.[8] The panel certified that its decision conflicts with *People v Morin,* 159 Mich App 582; 407 NW2d 43 (1987), which denied sentence credit in a similar situation. We then granted leave to appeal. 434 Mich 901 (1990).[9]

II

It is well settled that probation is a matter of grace, not of right. Whether probation is to be granted, and its conditions, are determinations that rest in the sound discretion of the trial court based upon authority provided by the Legislature. *People v McLeod,* 407 Mich 632, 660; 288 NW2d 909 (1980).

That a court may require participation in a drug treatment program as a condition of probation is

years for the 1983 conviction. Defendant claims it is unclear from the record whether his participation in the Rubicon/Odyssey program was required by his probation officer in connection with the 1983 conviction or was related to the 1987 conviction. On the other hand, the prosecutor maintains that the stay at Rubicon related only to the 1987 offense and, under *People v Prieskorn,* 424 Mich 327; 381 NW2d 646 (1985), could not be credited against the prison sentence imposed for the 1983 conviction.

[7] The record does not reveal how Circuit Judge Freeman calculated the number of days credited.

[8] *People v Whiteside,* unpublished opinion per curiam of the Court of Appeals, decided October 20, 1989 (Docket No. 114631).

[9] Our order granting leave to appeal was "[l]imited to the issue whether the defendant is entitled to credit for time served as a resident in drug treatment programs to the extent that his residency in those programs was a condition of his probation . . . ."

not being challenged in this appeal. In addition to authority to impose one or more of a number of specific conditions listed in MCL 771.3(4); MSA 28.1133(4), the probation statute confers upon the trial court broad discretion to "impose other lawful conditions of probation as the circumstances of the case may require or warrant, or as in its judgment may be proper."

Similarly, wide discretion is given the granting court to determine when and if probation shall be revoked. After reciting that "[i]t is the intent of the legislature that the granting of probation shall be a matter of grace conferring no vested right to its continuance," MCL 771.4; MSA 28.1134 provides that probation orders are revocable for "violation or attempted violation of a condition of probation or for any other type of antisocial conduct or action on the part of the probationer which shall satisfy the court that revocation is proper in the public interest."

Finally, MCL 771.4; MSA 28.1134, the probation revocation statute, provides:

> If a probation order is revoked, the court may proceed to sentence the probationer in the same manner and to the same penalty as the court might have done if the probation order had never been made.

Looking to this sentence in particular, the *Morin* Court determined that, to the extent of any conflict, the probation revocation statute controls over MCL 769.11b; MSA 28.1083(2), the sentence credit statute, and evinces an intent on the part of the Legislature to permit, "upon revocation of probation, the imposition of full punishment absent consideration of any previously imposed condition of probation." 159 Mich App 588.

Notwithstanding the broad grant of authority set forth in the probation revocation statute, defendant Whiteside successfully contended in the Court of Appeals that the trial court was required to award credit against the prison sentence imposed following probation revocation for the time he had been a resident in the New Paths treatment program as a condition of probation. Defendant's claim was based upon two grounds, one statutory and the other constitutional.

### III

First, defendant contends that he is entitled to such credit by virtue of the sentence credit statute:

> Whenever any person is hereafter convicted of any crime within this state and has served any time in jail prior to sentencing because of being denied or unable to furnish bond for the offense of which he is convicted, the trial court in imposing sentence shall specifically grant credit against the sentence for such time served in jail prior to sentencing. [MCL 769.11b; MSA 28.1083(2).]

When a related but different issue was presented in *People v Prieskorn,* 424 Mich 327; 381 NW2d 646 (1985), this Court examined the history and purpose of the sentence credit statute (§ 11b). We noted then that, before enactment of § 11b in 1965,[10] "a criminal defendant had no right to sentence credit for the period he was confined before sentence was imposed." *Id.* at 333. We also indicated agreement with the Court of Appeals in *People v Pruitt,* 23 Mich App 510; 179 NW2d 22 (1970), that the primary purpose of the credit statute is to " 'equalize as far as possible the status of the indigent and the less financially well-

---

[10] 1965 PA 73, effective March 31, 1966.

circumstanced accused with the status of the accused who can afford to furnish bail.' " 424 Mich 340.

However, after surveying a number of the conflicting interpretations of § 11b issued by panels of the Court of Appeals, the *Prieskorn* Court made clear that

> our role is not to determine whether we prefer to deal with the problem of presentence confinement liberally, conservatively, or in some intermediate fashion, or even to adopt a judicially preferred policy of fairness in the matter. The Legislature has made the policy decision, and our function is to apply it according to the language of the statute as that language enlightens us concerning the Legislature's intention. [*Id.* at 339.][11]

In *People v Adkins,* 433 Mich 732; 449 NW2d 400 (1989), attention focused again on the variety of conflicting interpretations of § 11b provided by the lower courts, many of which, it was said, appeared to turn on "policy considerations, or some notion of judicial fairness." *Id.* at 737. Echoing *Prieskorn,* the *Adkins* Court reiterated that such "policy decisions were generally the province of the Legislature, which had made its decision

---

[11] Justice RYAN, who wrote for a majority in *Prieskorn,* saw the Court of Appeals opinions which had interpreted the sentence credit statute as falling into three general categories: "the *liberal* approach that ordinarily affords credit for any presentence confinement served for whatever the reason, and whether related or unrelated to the crime for which the sentence in issue is imposed, *People v Chattaway,* 18 Mich App 538, 543; 171 NW2d 801 (1969); the *middle or intermediate* approach that asks the question whether the reason for the presentence confinement bears an 'intimate and substantial relationship' to the offense for which the defendant was convicted and is seeking sentence credit, *People v Groeneveld,* 54 Mich App 424, 427-428; 221 NW2d 254 (1974); and the *strict* approach which limits credit to presentence confinement that results from the defendant's financial inability or unwillingness to post bond for the offense for which he has been convicted, *People v Finn,* 74 Mich App 580; 254 NW2d 585 (1977)." 424 Mich 334.

regarding sentence credit by adopting § 11b, and that our function was merely to apply the language of that statute in order to effectuate the Legislature's intentions." *Id.* at 737-738. In addition, we said, "*Prieskorn* makes clear our conclusion that application of the sentencing credit statute is to be limited to situations in which the language of the statute 'commands' such credit." *Id.* at 747, n 8.

Returning to the words of § 11b,[12] it is readily apparent that the claimed credit is not authorized in the instant case unless defendant Whiteside served time "in jail" prior to sentencing "because of being denied or unable to furnish bond for the offense of which he [was] convicted . . . ." Given that the primary purpose of § 11b is to equalize the position of one who cannot post bond with that of a person who is financially able to do so, a showing that presentence confinement was the result of inability to post bond is an essential prerequisite to the award of sentence credit under the statute.

Defendant has not met this requirement. It cannot be said that he participated in the New Paths private drug treatment program because he was denied, or was unable to furnish, bond for the offense of which he was convicted. At the time of his entrance into the program under a delay of sentence order, defendant was required to post a bond, and he did so, to provide assurance that he would return to court on September 8, 1983, for

---

[12] Whenever any person is hereafter convicted of any crime within this state and has served any time *in jail prior to sentencing because of being denied or unable to furnish bond* for the offense of which he is convicted, the trial court in imposing sentence shall specifically grant credit against the sentence for such time served in jail prior to sentencing. [Emphasis supplied.]

sentencing. When he later appeared and was sentenced to probation, instead of prison, the posting of bond was not required.[13]

Moreover, there has been no assertion or showing by defendant that, at the point of sentencing, he was entitled to, but was denied, the opportunity to avoid incarceration or any of the conditions of probation by furnishing a bond.[14] Nor has there been any assertion or showing by defendant that he would have been unable to post a bond if it had been required.

On the state of this record, there is no basis for a determination that defendant resided at the New Paths facility during the probationary period "because of being denied or unable to furnish bond for the offense of which he [was] convicted . . . ." Even though remedial statutes are to be liberally construed, this rule of construction, as we emphasized in *Prieskorn,* " 'will not override other rules where its application would defeat the intention of the legislature or the evident meaning of an act.' " *Id.* at 340, quoting 3 Sands, Sutherland Statutory Construction (4th ed), § 60.01. Unless we are to completely ignore the language of the sentence credit statute, as well as its primary purpose (to equalize the status of indigents with others who can afford bail), we must conclude that § 11b is not applicable to defendant in this case.[15]

---

[13] An accused may be placed on probation where it appears to the satisfaction of the trial court that the defendant is not likely again to engage in a criminal course of conduct and that "the public good does not require that the defendant shall suffer the penalty imposed by law . . . ." MCL 771.1; MSA 28.1131.

[14] Except in limited circumstances, the Michigan Constitution assures that, *prior to conviction,* every person charged with a crime may avoid incarceration by posting bond with sufficient sureties. Art 1, § 15. However, once an accused is convicted, he loses not only the presumption of innocence, but the constitutional right of admission to bail.

[15] It is also contended by the people that defendant is not entitled to

Additionally, the people argue that § 11b applies only to time served "in jail," and that residency at the private rehabilitation center as a condition of probation does not qualify. We shall address this issue in connection with our consideration of defendant's contention that the award of such credit is mandated by the constitutional guarantee against double jeopardy.

IV

Relying on *North Carolina v Pearce,* 395 US 711; 89 S Ct 2072; 23 L Ed 2d 656 (1969), defendant maintains that the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution[16] requires award of the credit he claims. In *Pearce,* the conviction of a criminal defendant was set aside after he had served two and one-half years in prison. He was retried, convicted again, and the trial judge sentenced him to a prison term without crediting the time already served. The United States Supreme Court ruled that "the constitutional guarantee against multiple punishments for the same offense absolutely requires that punishment already exacted must be

credit because the time he spent in residence at the New Paths facility as a condition of probation was not time served "prior to sentencing" within the meaning of the sentence credit statute. This is consistent with the holding in *People v Morin, supra.* See also *People v Stange,* 91 Mich App 596, 599; 283 NW2d 806 (1979), wherein Justice RILEY wrote: "Significantly, the crediting statute applies to the time spent in jail *prior* to sentencing, MCL 769.11b [MSA 28.1083(2)]. However, jail time served as part of probation is *subsequent* to sentencing and, therefore, not entitled to any legislatively mandated credit upon revocation." (Emphasis in original.)

In view of the bases of our disposition in this case, we find it unnecessary to address this issue.

[16] US Const, Am V, in pertinent part provides: "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . ."

Const 1963, art 1, § 15, in pertinent part provides: "No person shall be subject for the same offense to be twice put in jeopardy."

fully 'credited' in imposing sentence upon a new conviction for the same offense." *Id.* at 718-719.

In *People v Sturdivant,* 412 Mich 92; 312 NW2d 622 (1981), this Court applied the *Pearce* principle to time served in jail while on probation.[17] Defendant Sturdivant had been sentenced to four years probation with a condition that the first six months be served in jail. Later, he violated probation and was sentenced to prison without receiving credit for the time served in jail while on probation. Ruling that the award of credit was required "by the double jeopardy principles enunciated by the United States Supreme Court" in *Pearce,* 412 Mich 96, this Court said:

> We can discern no basis for refusing to apply this principle to the situation before us, in which the initial period of *incarceration* was a condition of probation rather than a sentence voided by reversal. To hold otherwise could lead to the anomalous result of a defendant suffering *longer incarceration* as a result of having been placed on probation than if initially sentenced to the maximum prison term possible for the offense. [*Id.* at 97. Emphasis added.]

In the case before us, there is no challenge to the proposition that *Sturdivant* entitles this defendant to credit for any time served in jail while on probation. The people's argument is, simply, that this defendant served no probation time in jail. We believe it will be useful at this point to take a

---

[17] We note that the *Sturdivant* Court's opinion did not consider the reasoning in *United States v DiFrancesco,* 449 US 117, 137; 101 S Ct 426; 66 L Ed 2d 328 (1980), wherein the United States Supreme Court stated, "*North Carolina v Pearce* . . . demonstrate[s] that the Double Jeopardy Clause does not require that a sentence be given a degree of finality that prevents its later increase." The Court also stated that "there is no double jeopardy protection against revocation of probation and the imposition of imprisonment." *Id.*

closer look at the double jeopardy principles upon which *Pearce* and *Sturdivant* were based.

As the United States Supreme Court explained in *Pearce,* the Fifth Amendment's guarantee against double jeopardy not only safeguards against successive prosecutions for the same offense, but also provides a separate protection against multiple punishments for the same offense. The Court made clear that it is the latter protection which is "necessarily implicated in any consideration of the question whether . . . the Constitution requires that credit must be given for punishment already endured." *Id.* at 717.

More recently, in *Jones v Thomas,* 491 US 376, 381; 109 S Ct 2522; 105 L Ed 2d 322 (1989), the Court reiterated the well-established principle that, in the multiple punishment context, the interest which the Double Jeopardy Clause seeks to protect is " 'limited to ensuring that the total punishment [does] not exceed that authorized by the legislature,' " quoting *United States v Halper,* 490 US 435, 450; 109 S Ct 1892; 104 L Ed 2d 487 (1989), and *Missouri v Hunter,* 459 US 359, 366-367; 103 S Ct 673; 74 L Ed 2d 535 (1983).

That limitation has been recognized by this Court. For example, in *People v Sturgis,* 427 Mich 392, 400; 397 NW2d 783 (1986), we stated that the "constitutional protection against multiple punishment is a restriction on a court's ability to impose punishment in excess of legislative intent." We added, "[s]ince the power to define crime and fix punishment is wholly legislative, the [Double Jeopardy Clause insofar as it protects against multiple punishments for the same offense] is not a limitation on the Legislature . . . ." *Id.* at 400.

In *People v Wakeford,* 418 Mich 95, 107-108; 341 NW2d 68 (1983), we said that under the Fifth

Amendment "legislative intent is the beginning and end of the inquiry as to whether multiple punishments constitute double jeopardy."

In order, then, to apply in this case the constitutional principle recognized in *Pearce* and its progeny, we are required again to return to the inquiry: What did the Legislature intend? More specifically, the question in this context is: Does the total punishment imposed exceed that authorized by the Legislature?

In this case, it is clear that the maximum punishment authorized for the offense of which this defendant was convicted is "imprisonment in the state prison for not more than 15 years."[18] As indicated earlier, after violating probation, he was sentenced to a prison term of nine to fifteen years.

Whether double jeopardy protection requires the award of sentence credit for the probationary time claimed by this defendant turns on the meaning of the words "in jail" in the sentence credit statute (§ 11b) when read in light of the probation revocation statute, MCL 771.4; MSA 28.1134, which again provides in part:

> If a probation order is revoked, the court may proceed to sentence the probationer in the same manner and to the same penalty as the court might have done if the probation order had never been made.

We believe it is reasonable to assume that when the Legislature enacted § 11b in 1965, it was well aware of the probation revocation statute that had

---

[18] The statute under which defendant was convicted provides that any person who breaks and enters an occupied dwelling with intent to commit larceny shall be guilty of a felony "punishable by imprisonment in the state prison for not more than 15 years." MCL 750.110; MSA 28.305.

been in place since 1927.[19] If the Legislature's purpose in 1965 had been to amend or limit the effect of the probation revocation statute, it could easily have made its intention clear.[20]

Significantly, the question whether residency at a private rehabilitation center constitutes time served "in jail" was not addressed either by the *Pearce* Court or by the *Sturdivant* Court. In each of these cases, the sentence credit claimed was for time served in a prison or jail.

While the typical private rehabilitation program may impose discipline and a structured environment, it is not a "jail" as that term is commonly used and understood. The purpose of such a program is treatment and rehabilitation, rather than incarceration. Of course, this is not to suggest that there are not facilities operated by the state or local units of government which have as their purpose incarceration as well as rehabilitation.

We conclude that the meaning of the term "jail," as used in the sentence credit statute, when read in light of the probation revocation statute, does not extend to or include participation in a private rehabilitation program such as that operated by New Paths, Inc., although required as a condition of probation. Accordingly, we hold that neither § 11b nor the Double Jeopardy Clause requires the award of sentence credit for time spent by defendant as a resident participant in a private rehabilitation program as a condition of probation.[21]

---

[19] 1927 PA 175. In 1947 (1947 PA 246) and 1988 (1988 PA 78), this section of the Code of Criminal Procedure relating to revocation of probation was revised. However, no substantive changes were made in the sentence quoted above.

[20] To the extent that *Sturdivant* may appear to depart from this reasoning, it should be kept in mind that the time credited there was time served in the county jail. Our decision today limits the holding in *Sturdivant* to time served while incarcerated.

[21] Michigan is not alone in taking this position. Courts in a number

V

As we have noted, defendant also seeks sentence credit for a brief stay at another residential drug treatment center, Rubicon/Odyssey House, the circumstances of which are disputed. See n 6.

We reverse the decision of the Court of Appeals and remand this case to the circuit court for such further proceedings consistent with this opinion as may be appropriate, including a recalculation of the time served in jail for which defendant is entitled to sentence credit,[22] as well as a determination whether defendant is entitled to any sentence credit for the time he spent at Rubicon/Odyssey House.

---

of states have interpreted statutes similar to Michigan's as precluding credit for rehabilitative time spent as a condition of probation. For example, *Maus v State,* 311 Md 85; 532 A2d 1066 (1987) (statute inapplicable to private, tightly controlled drug rehabilitation facility); *State v Reyes,* 207 NJ Super 126; 504 A2d 43 (1986) (no credit awarded for time spent in a drug rehabilitation facility where participants are not locked in and departure does not constitute the criminal offense of escape); *Pennington v State,* 398 So 2d 815 (Fla, 1981) (credit denied for time spent in a drug rehabilitation facility); *State v Babcock,* 226 Kan 356; 597 P2d 1117 (1979) (no credit given for stay in a halfway house).

Credit has been denied in states where a statute grants credit for time spent "in custody." See *State v Cobb,* 135 Wis 2d 181; 400 NW2d 9 (1986) (no credit for a stay in a drug abuse treatment center); *State v Freeman,* 95 Ill App 3d 297; 50 Ill Dec 846; 420 NE2d 163 (1981) (no credit given for time in a drug treatment facility); *People ex rel Robinson v Warden, New York City Correctional Institution for Women,* 58 AD2d 559; 396 NYS2d 19 (1977) (no credit awarded for time spent at a live-in drug treatment program).

Sentence credit has also been denied in states where a statute grants credit for time spent "in confinement." See *State v Nagle,* 23 Ohio St 3d 185; 492 NE2d 158 (1986) (credit not required for time spent in a drug rehabilitation facility as a condition of probation); *Grant v State,* 659 P2d 878 (Nev, 1983) (no credit given for time spent in a residential drug treatment facility because the participants were free to leave at any time); *People v Radar,* 652 P2d 1085 (Colo, 1982) (no credit awarded for time spent in a halfway house).

[22] Attention is called to the prosecutor's concession in the brief filed in this appeal on behalf of the people, wherein he states that defendant is entitled to credit for 169 days served in jail, rather than the 143 days which were awarded.

CAVANAGH, C.J., and LEVIN, BRICKLEY, BOYLE, and RILEY, JJ., concurred with GRIFFIN, J.

MALLETT, J., took no part in the decision of this case.