*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TRACY SEAN WOODS,

Defendant-Appellant.

UNPUBLISHED
December 12, 2019

No. 345563
Wayne Circuit Court
LC No. 17-004397-01-FH

Before: BECKERING, P.J., and BORRELLO and M. J. KELLY, J.

PER CURIAM.

In June 2017, defendant, Tracy Woods, pleaded guilty to possession of less than 25 grams of cocaine, MCL 333.7403(2)(a)(*v*), possession of marijuana, MCL 333.7403(2)(d), and operating a vehicle with a suspended license, second-offense, MCL 257.904(1). In July 2017, pursuant to a plea agreement, Woods was sentenced to two years' probation, with the first year to be served in the Wayne County jail with no early release. On December 15, 2017, the trial court revoked Woods's probation after finding that he had violated it. On January 24, 2018, the court sentenced Woods as a fourth-offense habitual offender, MCL 769.12, to 2 to 15 years' imprisonment for the possession of less than 25 grams of cocaine conviction and 90 days imprisonment for the possession of marijuana conviction and the operating a vehicle while license suspended, second offense, conviction. Woods appeals by delayed leave granted,[1] challenging the court's decision to revoke his probation. For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

Woods's probation order included a requirement that he "[m]ake a truthful report to the probation officer monthly, or as often as the probation officer may require, either in person or in

---

[1] *People v Woods*, unpublished order of the Court of Appeals, entered October 25, 2018 (Docket No.345563).

writing as required by the probation officer." His probation officer, Jaunray Street, met with him on July 27, 2017 while Woods was incarcerated at the Wayne County William Dickerson Detention Facility (Dickerson). Street testified that he instructed Woods to report to probation supervision within 24 hours of release. Similarly, Woods testified that before his release from Dickerson, Street met with him and instructed him to report to the probation office within 24 hours of release.

On November 30, 2017, Woods was released from the Dickerson facility and transported to the Elmhurst Treatment Facility. Woods was placed on a GPS tether. Corporal Jeffry Melnyk was assigned to monitor Woods's tether. He testified that around 7:00 p.m. on November 30, 2017—the same day that Woods was transported to Elmhurst—Woods was no longer located at the inpatient facility. Instead, he was at his father's home. Woods explained that he determined he needed immediate medical attention, so he left the facility, borrowed a cellular phone from a stranger, and called his father to pick him up and take him to the hospital. He did not contact his probation officer before or after leaving the facility, and his probation officer confirmed that Woods failed to report to probation on November 30, 2017. Melnyk stated that he called Woods's father's home and spoke with Woods's father and with Woods. When Melnyk spoke to Woods, he instructed him to go to the hospital, but to then report to the tether unit at Dickerson with the hospital paperwork afterward.

On December 1, 2017, at approximately 3:00 p.m. Melynk observed that Woods remained at his father's house and had not yet gone to the hospital and had not reported to the tether unit. Melynk called Woods, who stated that he still planned on going to the hospital. Melynk reiterated that Woods had to report to Dickerson upon release from the hospital. Melynk observed that Woods's tether tracking showed that after 3:00 p.m., Woods went to the hospital and that he was released around 4:30 p.m. that same day. He did not report to the tether unit. Instead, he returned to his father's house around 7:30 p.m.

In addition to failing to report to Dickerson, Woods failed to report to his probation officer on December 1, 2017. Street testified that he contacted Woods and reminded him that he needed to report within 24 hours of his release. Woods confirmed that he understood, but explained that he was going to the hospital and would report after he left the hospital. When he had not reported by the end of the day on December 1, 2017, Street called him again and instructed him to report on December 4, 2017 at 9:00 a.m.

On December 2, 2017, Woods left his father's house between 10:30 a.m. and 11:00 a.m. He then returned to his father's house and remained there for the rest of the day. And on December 3, 2017, Woods stayed at his father's home for the entire day.

On December 4, 2017, Melynk called Woods five times without answer. Finally, Woods's father answered. Melynk explained that Woods needed to report to Dickerson with his hospital paperwork, and Woods's father stated that he would bring Woods to Dickerson. However, by 3:00 p.m. Woods had still not reported. In addition, Street attempted to contact Woods via telephone, but Woods did not answer. Street then traveled to Woods's father's house and spoke with Woods in person. He asked why Woods had not reported at 9:00 a.m. as he had been instructed to do. Woods responded that he had been "knocked out" from his medication and had forgotten to report. Street ordered Woods to report at 9:00 a.m. on December 5, 2017,

and cautioned that if Woods failed to do so he would violate his probation. Woods responded that he understood.

On December 5, 2017, Woods did not report to his probation officer in person at 9:00 a.m. as he had been directed the previous day. Further, based on Woods's failure to comply with the directives of Melnyk, he was arrested at his father's home at approximately 9:45 a.m.[2]

Based on Woods's failure to report to Street on December 4, 2017 and December 5, 2017, on December 6, 2017, Street requested a bench warrant. Relevant to this appeal, he averred that "Woods was released from supervised custody on 11/30/17, and failed to report as instructed on 12/04/2017 and 12/05/2017."[3] An arraignment on the probation violation was held on December 6, 2017. At that time, Woods's failure to report as directed by Melnyk was discussed. Subsequently, on December 15, 2017, a hearing on the violation was held. Street, Melnyk, and Woods testified.

The trial court found by a preponderance of the evidence that Woods violated the terms of his probation. The trial court found, in relevant part, that both Street and Melnyk contacted Woods and instructed him to report between November 1, 2017, and December 5, 2017. Woods understood his obligation to contact Street upon his release from Dickerson but failed to comply. Moreover, the trial court found that Woods only returned to custody on December 5, 2017, because he was arrested. The trial court, therefore, revoked Woods's probation. Woods filed a motion to vacate the finding of a probation violation and to reinstate his probation, but the court denied the motion.

This appeal follows.

## II. REVOCATION OF PROBATION

### A. STANDARD OF REVIEW

Woods raises three interrelated arguments on appeal. First, he asserts that the trial court was limited to making findings of fact related to specific probation violations that were listed in the December 6, 2017 motion and affidavit seeking a bench warrant. He argues that there was insufficient evidence to establish that he violated probation in any of the four ways listed. Finally, he contends that because his probation was revoked on the basis of uncharged probation violations, the revocation violated both the Michigan Court Rules and his constitutional right to due process. This Court reviews de novo challenges regarding whether there was sufficient evidence to support a conviction. *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757

---

[2] Melnyk testified that he arrived at approximately 9:30 a.m. and that he had to knock on the door for "maybe, ten, fifteen minutes" before the door was opened.

[3] Although three additional violations of probation were alleged, no evidence was submitted at the probation-violation hearing to support the allegations, and the trial court made no findings relevant to those allegations. Accordingly, we will only consider the allegation in Paragraph 1, i.e., that Woods failed to report as instructed on December 4, 2017 and December 5, 2017.

(2010). "The decision to revoke probation is a matter within the sentencing court's discretion." *People v Breeding*, 284 Mich App 471, 479; 772 NW2d 810 (2009) (quotation marks and citation omitted). As with other discretionary decisions, the trial court's decision to revoke probation is reviewed for an abuse of discretion. See e.g., *People v Grant*, __ Mich App __, __; __ NW2d __ (2019) (Docket No. 344625); slip op at 5 (reasoning that abuse of discretion standard applies to a trial court's discretionary decision to designate a prisoner as eligible for early parole). The trial court abuses its discretion when its decision results in an outcome outside the principled range of outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). Further, we review for clear error the trial court's factual findings. *People v Carter*, 503 Mich 221, 226; 931 NW2d 566 (2019). A finding of fact is clearly erroneous if the reviewing court "is left with a definite and firm conviction that a mistake has been made." *People v Manuel*, 319 Mich App 291, 303; 901 NW2d 118 (2017) (quotation marks and citation omitted). We review de novo constitutional claims and challenges to the application of a court rule. *People v Cole*, 491 Mich 325, 330; 817 NW2d 497 (2012).

## B. ANALYSIS

All probation orders are revocable because probation is "a matter of grace conferring no vested right to its continuance." MCL 771.4. Since probation is not a vested right, a probationer has limited constitutional rights at a probation revocation hearing in comparison to a criminal defendant. *Breeding*, 284 Mich App at 481. The prosecution bears the burden of proving a probation violation only by a preponderance of the evidence. MCR 6.445(E)(1). This Court reviews the evidence in the light most favorable to the prosecution. *Breeding*, 284 Mich App at 487.

We first address Woods's assertion that there was insufficient evidence to establish that he failed to report as instructed on December 4, 2017 and December 5, 2017. The record reflects that Street instructed Woods to report within 24 hours of being released from Dickerson. He repeated that directive to Woods on December 1, 2017, and he expressly instructed Woods to report at 9:00 a.m. on December 4, 2017, and then, when Woods did not show up, he directed him to report at 9:00 a.m. on December 5, 2017. Woods did not show up at the appointed time on December 5, 2017. Woods appears to believe that he was excused from reporting on December 4, 2017 because Street told him that his failure to report on December 5, 2017 would result in a violation. However, viewed in the light most favorable to the prosecution, the undisputed facts are that he did not report to Street at 9:00 a.m. on December 4, 2017 despite being told to do so by Street and acknowledging that he had to do so. Thus, there was sufficient evidence that he violated his probation by not reporting as instructed by Street, his probation officer, on December 4, 2017. Further, contrary to his belief that he could not have complied with Street's directive to report on December 5, 2017 because he was arrested by Melnyk, the record reflects that he was arrested at approximately 9:45 a.m., which is almost 1 hour past the time that he was instructed to appear. Accordingly, there was sufficient evidence to establish by a preponderance of the evidence that—as alleged in the written charge—Woods failed to appear as instructed on December 4, 2017 and on December 5, 2017.

We next address Woods's argument that the trial court did not actually find that he failed to report as instructed on December 4, 2017 and on December 5, 2017. Woods directs this Court to the following finding of fact made by the trial court: "The record further reflects that on

-4-

December 4th, Mr. Woods, once again, failed to return to Dickerson, despite being told to do so, and failed to contact, to telephone Street." Woods asserts that with this statement, the trial court found (1) that Woods failed to report to Dickerson on December 4, 2017 as directed by Melnyk, and (2) that Woods failed to contact Street by telephone on December 4, 2017. He argues that his order of probation did not require him to follow the directions of Melnyk, so his failure to follow Melnyk's command cannot constitute the support for a violation of probation. Further, he argues that Street did not direct him to telephone him on December 4, 2017, nor did the written charge include an allegation that Woods failed to comply with his probation by not calling Street on December 4, 2017. The actual charge, however, was that Woods failed to report as directed on December 4, 2017. It does not specify any additional details of the instruction to report, such as who gave the ignored instruction and the time and manner in which Woods was directed to report. Thus, the written charge was broad enough to cover the court's factual findings in the above statement.

In addition, reviewing the court's findings in full, it is plain that the court did not merely find that Woods did not telephone Street on December 4, 2017, he also was only returned to custody because he was arrested on December 5, 2017. Again, Woods was instructed by both Street and Melnyk to report on December 4, 2017. Woods did not do so, but rather, remained at his father's home. Since a probationer cannot report without "contacting" his or her probation officer, the trial court's statement is reasonably read as finding that Woods did not report to either Melnyk or Street on December 4, 2017. Additionally, the trial court went on to state that "[t]he Court does find, as a fact, that Mr. Woods only returned to custody, when the Sheriff's Department went to his father's location on December 5, to pick him up." Therefore, the trial court's statement makes it clear that it additionally found that Woods also failed to report as instructed on December 5, 2017.

Moreover, the trial court is granted wide discretion "to determine if and when probation shall be revoked." *People v Whiteside*, 437 Mich 188, 193; 468 NW2d 504 (1991). MCL 771.4 provides that probation orders are revocable in any manner that the trial court "considers applicable either for a violation or attempted violation of a probation condition or for any other type of antisocial conduct or action on the probationer's part for which the court determines that revocation is proper in the public interest." The decision to revoke probation, however, must be based on verified facts in the record. *Breeding*, 284 Mich App at 487. Based on a fair reading of the trial court's finding, the trial court did, in fact, find that Woods failed to report as instructed on December 4, 2017, and December 5, 2017. And, as explained above, sufficient evidence was presented to support that finding.

Woods also contends that the Michigan Court Rules and defendant's due-process right to notice were violated because his probation was revoked on the basis of uncharged violations. However, because (1) there was sufficient evidence to establish that Woods violated his probation in the manner charged in paragraph 1 of the affidavit and motion seeking a bench warrant, and (2) because the court made factual findings that the charged violation occurred, this argument is without merit. We note that although the trial court's factual findings included many findings unrelated to Woods's conduct on December 4, 2017, and December 5, 2017, MCR 6.445 does not instruct that the trial court's findings of fact are exclusively limited to the charged probation violations.

Affirmed.

/s/ Jane M. Beckering
/s/ Stephen L. Borrello
/s/ Michael J. Kelly