PEOPLE v HITE (AFTER REMAND)

Docket No. 144198. Submitted September 23, 1992, at Grand Rapids. Decided June 7, 1993, at 9:10 A.M.

Marvin Hite pleaded guilty in the Kalamazoo Circuit Court, William G. Schma, J., of receiving and concealing stolen property over $100 and received a sentence of probation that included as a condition the completion of a Department of Corrections program at Camp Sauble established pursuant to the Special Alternative Incarceration Act, MCL 798.11 *et seq.*; MSA 28.2356(1) *et seq.* .The defendant subsequently violated probation and was sentenced to two to five years' imprisonment for the receiving and concealing conviction. The trial court refused the defendant's request that he be given credit for time spent at Camp Sauble. The defendant appealed. The Court of Appeals, SAWYER, P.J., and MURPHY and GRIFFIN, JJ., in an unpublished opinion per curiam, decided October 29, 1992 (Docket No. 144198), remanded for an evidentiary hearing regarding whether confinement at Camp Sauble constituted incarceration. The trial court determined that it did not.

After remand, the Court of Appeals *held:*

The Double Jeopardy Clauses of the United States and Michigan Constitutions require that a probationer be given credit for time served while incarcerated as a condition of probation. Time spent in a special alternative incarceration unit constitutes incarceration. Accordingly, the defendant is entitled to sentencing credit for the time he spent at Camp Sauble.

Remanded for redetermination of sentencing credit.

SENTENCES — SENTENCING CREDIT — PROBATION — SPECIAL ALTERNATIVE INCARCERATION.

A defendant who serves time in a special alternative incarcera-

REFERENCES

Am Jur 2d, Criminal Law §§ 548, 550.5; Penal and Correctional Institutions § 229.

Right to credit for time spent in custody prior to trial or sentence. 77 ALR3d 182.

Defendant's right to credit for time spent in halfway house, rehabilitation center, or other restrictive environment as condition of probation. 24 ALR4th 789.

tion unit of the Department of Corrections as part of a sentence of probation and subsequently is convicted and sentenced for violating probation is entitled to sentencing credit for the time served in the special alternative incarceration unit (US Const, Am V; Const 1963, art 1, § 15; MCL 798.11 *et seq.*; MSA 28.2356[1] *et seq.*).

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *James J. Gregart,* Prosecuting Attorney, and *Michael H. Dzialowski,* Assistant Prosecuting Attorney, for the people.

*Thomas E. Harmon,* for the defendant on appeal.

#### AFTER REMAND

Before: SAWYER, P.J., and MURPHY and GRIFFIN, JJ.

GRIFFIN, J. Defendant pleaded guilty of violating his probation and was sentenced to two to five years in prison for the underlying offense of receiving and concealing stolen property over $100. MCL 750.535; MSA 28.803. After remand, the sole remaining issue is whether the trial court erred in denying defendant sentencing credit for time spent in a Special Alternative Incarceration Unit "boot camp". We hold that sentencing credit must be afforded for time spent in the Special Alternative Incarceration Unit of the Michigan Department of Corrections. Accordingly, we reverse the decision of the circuit court.

I

Before the probation violation that led to his prison sentence, defendant was ordered to complete a special alternative incarceration (SAI) program as a condition of his probation. Defendant

attended boot camp at Camp Sauble in Freesoil, Michigan, and successfully completed the program on August 31, 1990.

On remand, the trial court developed an evidentiary record regarding the boot camp program. The record reflects that Camp Sauble was originally built as a minimum security prison. The camp consists of four separate buildings enclosed by a fence that is eighteen feet high and topped with barbwire. The camp grounds consist of ten acres inside the perimeter fence, together with twenty to thirty acres outside the fence.

Camp Sauble is modeled after a military basic training camp. Liberties are severely restricted. Regimentation, strict discipline, and strenuous physical labor and training are intensively imposed.

The SAI program is administered by the Department of Corrections pursuant to the Special Alternative Incarceration Act, MCL 798.11 et seq.; MSA 28.2356(1) et seq. The act repeatedly refers to the probationer's "incarceration" while in the program:

> The department shall establish special alternative incarceration units for the purpose of housing and training probationers eligible for special alternative incarceration pursuant to section 3b of chapter XI of the code of criminal procedure, Act No. 175 of the Public Acts of 1927, being section 771.3b of the Michigan Compiled Laws. A probationer who is placed in a unit by a court shall be transported by the county sheriff directly to a unit and shall not be processed through the department's reception center for prisoners. The department may transfer a probationer from 1 unit to another unit at the department's discretion, *during the probationer's incarceration in a unit.* [MCL 798.13; MSA 28.2356(3). Emphasis added.]
>
> The units shall provide a program of physically

strenuous work and exercise, patterned after military basic training, and other programming as determined by the department and approved by the commission of corrections. *The term of any probationer's incarceration* in a unit shall not exceed 120 days except that the probationer also shall be required to complete a period of not less than 120 days of probation under intensive supervision; and may be required to complete a period of not more than 120 days in a local residential program, if ordered to do so under section 3b(9) of the code of criminal procedure, Act No. 175 of the Public Acts of 1927, being section 771.3b of the Michigan Compiled Laws. [MCL 798.14; MSA 28.2356(4). Emphasis added.]

Further, the act refers to the probationer's "date of release" from his "incarceration unit":

At any time *during a probationer's incarceration* in a unit, but not less than 5 days before *the probationer's expected date of release,* the department shall certify to the sentencing court as to whether the probationer has satisfactorily completed the course of training at the unit. [MCL 798.15; MSA 28.2356(5). Emphasis added.]

II

The Double Jeopardy Clauses of the United States and Michigan Constitutions[1] require that a probationer be given credit for time served while *incarcerated* as a condition of probation. In *People v Sturdivant,* 412 Mich 92, 97; 312 NW2d 622 (1981), the Supreme Court held:

---

[1] US Const, Am V, in pertinent part provides: "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . . "

Const 1963, art 1, § 15, in pertinent part provides: "No person shall be subject for the same offense to be twice put in jeopardy."

We can discern no basis for refusing to apply this principle [double jeopardy prohibition] to the situation before us, in which the initial period of incarceration was a condition of probation rather than a sentence voided by reversal. To hold otherwise could lead to the anomalous result of a defendant suffering longer incarceration as a result of having been placed on probation than if initially sentenced to the maximum prison term possible for the offense.

The holding of *Sturdivant* is consistent with and compelled by *North Carolina v Pearce,* 395 US 711; 89 S Ct 2072; 23 L Ed 2d 656 (1969), which held that time spent in prison before retrial must be credited as time served pursuant to the Double Jeopardy Clause of the Fifth Amendment.

It is clear from both *Sturdivant* and *Pearce* that defendant must be afforded sentencing credit if he was incarcerated as a condition of his probation. This rule of law was recently reiterated by the Michigan Supreme Court in *People v Whiteside,* 437 Mich 188; 468 NW2d 504 (1991), cert den 502 US —; 112 S Ct 249; 116 L Ed 2d 204 (1991).[2] In holding that a private drug rehabilitation program was not incarceration, the Court emphasized that the structured environment provided by the private agency was not the equivalent of "jail" as the term is commonly understood. Further, the Court noted that incarceration was not a purpose of the drug rehabilitation program. The Supreme Court recognized, however, that some correctional facilities run by government may serve the dual functions of incarceration and rehabilitation:

Of course, this is not to suggest that there are not facilities operated by the state or local units of

---

[2] The Supreme Court in *Whiteside, supra* at 202, n 20, restricted the holding of *Sturdivant, supra,* as follows: "Our decision today limits the holding in *Sturdivant* to time served while incarcerated."

government which have as their purpose incarceration as well as rehabilitation. [*Whiteside, supra* at 202.]

We conclude that Camp Sauble is such a correctional facility. The camp's purposes are both rehabilitation and incarceration. The discipline, regimentation, and deprivation of liberties are greater at Camp Sauble than at any minimum security prison operated by the Department of Corrections.

As the term "incarceration" is commonly understood, one would perceive himself to be incarcerated during the time spent at Camp Sauble. Dictionary definitions support this conclusion. For example, incarceration is defined by *The Random House College Dictionary: Revised Edition (1988)* as follows:

1. To imprison; confine. 2. To enclose; constrict closely.

III

The people argue and the circuit court agreed that defendant was not incarcerated while at Camp Sauble because the boot camp was not tantamount to jail. They note that although defendant was ordered to attend the boot camp, he could nevertheless quit the program and thereby violate his probation. Further, the prosecutor and the circuit court have emphasized the differences between the boot camp and maximum security confinement. In denying sentencing credit, the circuit court noted the following differences between the boot camp and traditional confinement: (1) the absence of prison cells, bars, and lock-down capabilities, (2) the permitted movement of probationers outside the perimeter fence to do assigned

work tasks, and (3) the emphasized goal of rehabilitation.

We believe that the circuit court erred in narrowing the comparative focus to characteristics tantamount to maximum security confinement. As previously noted, Camp Sauble was originally constructed as a minimum security prison. The physical facilities of the camp still resemble a minimum security prison. We disagree with the conclusion that incarceration only occurs in correctional facilities that have bars, cells, and lock-down facilities.

The state-run boot camp restricts personal liberties and achieves order and discipline not as a consequence of its physical facilities, but as a result of its military style of operations. Despite the less imposing facility, the government's control and constriction of one's activities are greater at a boot camp than at a traditional prison.

We are also not persuaded by the argument that boot camp probationers are not incarcerated because they often leave the fenced area to perform assigned work tasks. In this regard, we note that "trustees" and other low security inmates at other correctional facilities are routinely allowed to leave the immediate confines of the prison grounds. An inmate's incarceration does not end merely because he performs assigned work outside the gates of a correctional facility.

Finally, although we recognize that rehabilitation is an elusive goal of our penal system, we do not share the cynical view that "warehousing" is the sole function of the traditional prison facilities operated by the Department of Corrections. We believe that rehabilitation is a goal shared by all state correctional facilities. Although rehabilitation is treated with greater emphasis at the correction department boot camps, we cannot ignore the reality that incarceration also occurs.

IV

Accordingly, pursuant to the Double Jeopardy Clauses of the United States and Michigan Constitutions, we hold that the trial court erred in denying defendant sentencing credit for time spent in the Special Alternative Incarceration Unit of the Department of Corrections.

Remanded for a redetermination of sentencing credit. We do not retain jurisdiction.