*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MATTHEW MARTIN IV,

        Defendant-Appellant.

UNPUBLISHED
July 13, 2023

No. 360229
Kalamazoo Circuit Court
LC No. 2020-001360-FC

Before: RIORDAN, P.J., and MARKEY and YATES, JJ.

PER CURIAM.

A jury convicted defendant, Matthew Martin IV, on charges stemming from a robbery that resulted in extensive injuries to the victim and the subsequent use of the victim's stolen debit card. On appeal of right, defendant presents several challenges to his convictions. Finding no errors that require reversal, we affirm defendant's convictions.

## I. FACTUAL BACKGROUND

On December 21, 2019, at about 9:00 p.m., defendant robbed the victim as she was leaving her house to walk to a nearby home of a friend. Defendant pointed a handgun at her and threatened to shoot her if she did not hand over her phone. When the victim resisted, defendant pistol whipped her so hard that pieces of the gun's magazine broke off. As the victim fell to the ground, defendant grabbed her backpack and fled. The blow broke the victim's orbital bone and fractured her skull. After the incident, she received immediate medical treatment for her injuries at Borgess Hospital. Although the robbery was witnessed by a passing motorist, neither the victim nor the motorist was able to identify defendant as the assailant.

The day after the robbery, defendant used the victim's debit card to make purchases at three stores. The bank that issued the debit card gave the victim and the police information concerning the time, place, and amount of each unauthorized transaction. Using that information, the police were able to obtain video footage of defendant using the debit card at three different stores: On the Rocks, North Pole Party Store, and Lesman's Market. The lead detective in the case also obtained records from defendant's Facebook accounts, including photographs showing defendant wearing the same jacket he appeared to be wearing in the videos from the stores. Defendant was holding a

pistol in each hand, and the detective was able to determine that the photographs were posted to defendant's Facebook page four days after the robbery.

About a month later, during an unrelated investigation, a tracking dog led police to storage rooms on the second and third floors of an apartment building. There, officers of the Kalamazoo Department of Public Safety (KDPS) found defendant sitting in a closet in a second-floor storage room with cell-phone parts or a cell-phone case in his lap. Police found matching cell-phone parts in a third-floor storage room along with a handgun containing a broken magazine, a dark backpack, and a black jacket. A KDPS officer swabbed the handgun found in the storage room for DNA. At trial, an expert in DNA analysis testified that defendant's DNA profile matched the DNA profile of the handgun's major DNA donor. A retired KDPS crime-laboratory specialist assembled the pieces of the magazine taken from the scene of the robbery with the broken magazine found in the storage unit and showed the jury that they fit together perfectly.

A jury convicted defendant of armed robbery (serious injury), MCL 750.529; possession of a firearm during the commission of a felony, MCL 750.227b; possession of a firearm by a felon, MCL 750.224f; possession of another person's financial-transaction device with the intent to use, deliver, circulate, or sell it, MCL 750.157p; and three counts of the illegal sale or use of a financial-transaction device, MCL 750.157q. Defendant now appeals.

## II. LEGAL ANALYSIS

On appeal, defendant has offered numerous arguments challenging his convictions. First, defendant contends that the trial court abused its discretion by allowing three of the prosecution's witnesses to testify even though they had trouble conversing in English and the record established that the interpreter provided for one of the witnesses did not solve the problem. Second, defendant asserts that the trial court erred in denying his request for a mistrial after a law-enforcement officer stated that defendant was on parole and had committed similar crimes in the past. Third, defendant claims that the evidence was insufficient to sustain his convictions. That argument is premised on defendant's contention that the trial included inadmissible testimony and the prosecutor committed misconduct at the trial. Defendant insists that, without the inadmissible evidence and prosecutorial misconduct, the evidence was insufficient to sustain his convictions. Fourth, defendant argues that his attorney furnished ineffective assistance. Finally, in a Standard 4 brief,[1] defendant argues that the trial court erred by not granting defense counsel's request to suppress DNA evidence. Each of these arguments will be addressed in turn.

### A. LIMITED-ENGLISH PROFICIENCY

Defendant argues that incomprehensible testimony provided by three of the prosecution's witnesses undermined confidence in the jury's verdict. We review a trial court's determination of the competency of a witness for an abuse of discretion. *People v Breck*, 230 Mich App 450, 457; 584 NW2d 602 (1998). This Court also reviews for an abuse of discretion the trial court's decision whether to appoint an interpreter for a witness. *People v Warren (After Remand)*, 200 Mich App

---

[1] A Standard 4 brief refers to the brief a defendant may file *in propria persona* under Standard 4 of Michigan Supreme Court Administrative Order No. 2004-6. See 471 Mich c, cii (2004).

586, 591; 504 NW2d 907 (1993). We will find that a trial court abused its discretion by failing to appoint an interpreter for a witness only when "it appears from the record that the witness was not understandable, comprehensible, or intelligible and that the absence of an interpreter deprived the defendant of some basic right." *Id*. at 591-592.

Here, three witnesses offered brief testimony regarding the transactions at North Pole Party Store, Lesman's Market, and On the Rocks. Davinder Singh testified through an interpreter who translated Punjabi to English and English to Punjabi. Herkirat Singh and Rusminder Singh both testified without an interpreter. Defendant cites several instances where he claims testimony from Davinder, Herkirat, and Rusminder cannot be squared with the questions that were asked of them. But defendant's focus on the few instances when these witnesses gave answers that were difficult to understand minimizes the overall clarity of their testimony. When read as a whole, the testimony from those three witnesses authenticated receipts created during defendant's transactions at their respective stores and briefly discussed the video surveillance employed at their stores. Although defendant contends in conclusory fashion that the "gross mis-match between some of the questions and answers create[s] a strong signal that other answers are simply not reliable," the transcripts of the witnesses' testimony indicates otherwise. Accordingly, the trial record does not demonstrate that the witnesses were "not understandable, comprehensible, or intelligible[.]" *Warren*, 200 Mich App at 592.

Furthermore, defendant has not identified any deprivation of any basic trial right. See *id*. For example, in *Warren*, 200 Mich App at 592-593, this Court noted that one such right is the right to cross-examine a witness. Here, the record does not indicate that defendant was hindered in his ability to cross-examine Davinder, and defendant did not even attempt to cross-examine Herkirat or Rusminder. Because defendant has not identified a right that was withheld or taken from him, his argument that his due-process rights were violated is unpersuasive. Accordingly, the trial court did not abuse its discretion in failing to appoint an interpreter for Herkirat or Rusminder or by not appointing a different interpreter for Davinder.

## B. MISTRIAL

Defendant next argues that the trial court abused its discretion by denying his motion for a mistrial following allegedly inappropriate testimony from a police officer concerning defendant's criminal history. During trial, Lieutenant Charles Treppa testified that he had retrieved the video footage of defendant at one of the stores where defendant had used the victim's debit card. Defense counsel tried to establish that Lt. Treppa had looked at a photograph of defendant before traveling to one of the stores to obtain footage of the unauthorized use of the victim's debit card. Defense counsel's line of questioning arose from a statement in the officer's police report indicating that he had viewed the I/LEADS booking photograph of defendant. The officer denied having seen a photograph of defendant before he went to the store to obtain the video footage. Asked on redirect examination whether he had any type of image or photograph of defendant before he went to the store, the officer responded that he did not. In an effort to clarify what he had written in his police report, the officer said that, after still shots from the video he obtained were circulated, someone brought to his attention that defendant "was released on parole and had been responsible for similar crimes in the past." Defense counsel objected, so the trial court struck the officer's testimony and instructed the jury not to consider the testimony as evidence. Later, defense counsel stated that he was inclined to request a mistrial. The trial court denied that motion on grounds that the court's

curative instruction was adequate. The court offered to further instruct the jury if defense counsel so desired, but defense counsel did not request any additional instruction on the matter. Defendant now insists that the trial court erred when it denied his request for a mistrial.

This Court reviews for an abuse of discretion a trial court's ruling on a motion for mistrial. *People v Boshell*, 337 Mich App 322, 335; 975 NW2d 75 (2021). A trial court abuses its discretion if its decision falls outside the range of reasonable and principled outcomes. *People v Duncan*, 494 Mich 713, 722-723; 835 NW2d 399 (2013). A trial court may grant a mistrial if there is "an irregularity that is prejudicial to the rights of the defendant and impairs the defendant's ability to get a fair trial." *People v Beesley*, 337 Mich App 50, 54; 972 NW2d 294 (2021) (quotation marks and citation omitted). The defendant must prove prejudice to his or her defense in order for a due-process violation to result in the reversal of a criminal conviction. *Id*. Not only must the defendant prove prejudice, but he or she also must prove that "the error complained of is so egregious that the prejudicial effect can be removed in no other way." *Id*. (quotation marks and citation omitted).

Here, as inappropriate as the officer's testimony was, we cannot say it impaired defendant's ability to have a fair trial. The trial court immediately struck the officer's testimony and instructed the jury that it was not to consider the testimony as evidence. The trial court also offered to provide an additional instruction at defendant's request. Additionally, before jury deliberations began, the trial court instructed the jury not to consider "stricken testimony that was heard," but to make their decision "only on the evidence that [the trial court] let in and nothing else." The jury is presumed to have followed the trial court's instructions, and the instructions here were sufficient to cure any prejudice caused by the officer's inappropriate testimony. See *Beesley*, 337 Mich App at 59-60.

Beyond that, the jury received other evidence pointing toward defendant's past and present criminal activity. The jury was aware that the parties had stipulated that defendant was convicted of a prior felony that prevented him from legally possessing, using, or carrying a firearm. The jury also heard testimony that defendant was initially apprehended as a suspect in an unrelated criminal investigation. Given the trial court's efforts to mitigate any prejudice from the officer's testimony, the parties' stipulation that defendant had a prior felony conviction, and the testimony that linked defendant to an unrelated criminal investigation, we cannot say that "the error complained of is so egregious that the prejudicial effect can be removed in no other way" than granting a mistrial. *Id*. at 54.

In addition, defendant's assertion that the trial court undermined its curative instruction by asking the officer to confirm that he saw still images of defendant lacks merit, as this question did not address the improper portion of Lt. Treppa's testimony. The improper portion of the testimony advised the jury that defendant "was released on parole and had been responsible for similar crimes in the past," not merely that Lt. Treppa had reviewed photographs of defendant. In sum, no abuse of discretion occurred in the denial of defendant's motion for a mistrial. See *id*.

## C. SUFFICIENCY OF THE EVIDENCE

Defendant offers a two-part argument in contending that some of his convictions were not supported by sufficient evidence. That is, defendant claims that the trial included several errors in the admission of evidence and that the prosecutor committed misconduct. Defendant then insists that, in light of those errors, insufficient admissible evidence was left in the record to sustain his

convictions for armed robbery involving serious injury, felon-in-possession of a firearm, and two counts of felony-firearm. Defendant's two-part argument is wrong on both the facts and the law.

We turn first to defendant's challenges to the admission of evidence and the impact, if any, that had on the evidence presented to the jury. Under MCR 2.613(A), "[a]n error in the admission or the exclusion of evidence . . . is not ground for granting a new trial . . . unless refusal to take this action appears to the court inconsistent with substantial justice." That rule likewise applies to "an error in a ruling or order, or an error or defect in anything done or omitted by the court or by the parties[.]" MCR 2.613(A). Although MCR 2.613(A) is a civil rule, it also applies to criminal cases. MCR 6.001(D).

Defendant argues that several errors occurred in the admission of testimony from Detective John Stolsonburg.[2] These challenges are unpersuasive. Defendant claims that it was error to allow Det. Stolsonburg to tell the jury that he was a task-force officer with the FBI assigned to a violent-crime task force. It is unclear how it was error to permit Det. Stolsonburg to briefly describe his employment. Moreover, there is nothing in the record that suggests that this information presented to the jury had any bearing on the jury's decision to convict defendant. Defendant also argues that it was error to permit Det. Stolsonburg to testify that defendant was the man in the surveillance videos the jury watched that showed defendant using the victim's debit card. This argument lacks merit. That testimony had no bearing on the convictions on Counts I through IV, the convictions defendant describes as unsupported by sufficient evidence. Defendant states in his brief that he is not challenging the sufficiency of the evidence supporting his convictions stemming from his use of the victim's debit card because of "the jury's ability to see [defendant] and see the store videos." Det. Stolsonburg's opinion that it was defendant in the store videos had no bearing on defendant's convictions on Counts I through IV, so admission of that testimony does not advance defendant's argument that those convictions were unsupported by sufficient evidence. Defendant also argues that the trial court erred when it allowed Det. Stolsonburg to testify about when a photograph was posted to Facebook. The fact that a photograph posted to Facebook could have been taken at some earlier time is an issue defendant could have explored on cross-examination, but it does not render Det. Stolsonburg's testimony inadmissible. Again, this issue raised by defendant does not impact the sufficiency of the evidence presented to the jury at trial.

Defendant faults the prosecution for committing misconduct on five occasions during the trial. "Claims of prosecutorial misconduct are generally reviewed de novo to determine whether the defendant was denied a fair trial." *People v Dunigan*, 299 Mich App 579, 588; 831 NW2d 243 (2013). A defendant "bears the burden of demonstrating that such an error resulted in a miscarriage of justice." *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008). And a curative instruction is presumed to cure the prejudicial effect of most errors. See *People v Ericksen*, 288 Mich App 192, 199-200; 793 NW2d 120 (2010). This Court reviews all unpreserved claims of prosecutorial misconduct by determining whether the claimed errors amounted to plain error that affected substantial rights. *People v Gibbs*, 299 Mich App 473, 482; 830 NW2d 821 (2013).

---

[2] Defendant also reiterates his argument that Lt. Treppa's testimony was improper. That issue was addressed in full in the previous section of this opinion and requires no further analysis.

First, defendant insists the prosecutor committed misconduct by asking leading questions. "We review a trial court's decision to allow leading questions for an abuse of discretion." *In re Susser Estate*, 254 Mich App 232, 239; 657 NW2d 147 (2002). "In order to demonstrate that reversal is warranted for the prosecution asking leading questions, it is necessary to show some prejudice or patterns of eliciting inadmissible testimony." *People v Johnson*, 315 Mich App 163, 200; 889 NW2d 513 (2016) (quotation marks and citation omitted). Defendant has failed to establish how he was prejudiced by any leading questions the prosecutor asked at trial, and he has not shown that any leading questions were part of a pattern "of eliciting inadmissible testimony." See *id*. Defendant has failed to demonstrate how these leading questions did anything other than facilitate the pace of the trial, which was the reason the trial court overruled defendant's objection and allowed the questions to be asked. Defendant has failed to establish that the trial court abused its discretion by allowing leading questions. See *In re Susser Estate*, 254 Mich App at 239. Also, defendant has not established that the prosecutor's use of leading questions in any way advances defendant's allegation that his convictions were unsupported by sufficient evidence.

Defendant additionally asserts that the prosecution improperly bolstered the credibility of its witnesses by asking laboratory technicians and scientists about "their backgrounds, continuing education, in-service training and experience." Even when the evidence is of marginal relevance, "prosecutorial misconduct cannot be predicated on good-faith efforts to admit evidence." *People v Noble*, 238 Mich App 647, 660-661; 608 NW2d 123 (1999). This argument is meritless, as even defendant acknowledges that this information "was relevant for the experts as foundation for their qualifications." Moreover, to the extent that this information was not relevant, defendant does not even attempt to establish how he was prejudiced by the presentation of that testimony to the jury. Similarly lacking in merit is defendant's claim that the prosecutor committed misconduct by asking Det. Stolsonburg about his procedure for handling investigations of major cases, which defendant describes as irrelevant. Defendant has not indicated how he was prejudiced by the introduction of this allegedly irrelevant testimony.

Defendant next insists that the prosecutor committed misconduct by making unwarranted statements or explanations that were "disguised as prefatory or foundational portions of questions." "Appellate review of improper prosecutorial remarks is generally precluded absent objection by counsel[.]" *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994). "An exception exists if a curative instruction could not have eliminated the prejudicial effect or where failure to consider the issue would result in a miscarriage of justice." *Id*. The example that defendant has highlighted involved a question from the prosecutor seeking to clarify a witness's previous testimony on cross-examination. Defendant did not object to this question at trial, he has failed to explain how he was prejudiced by this question, and he has failed to establish that the prejudicial effect of this question could not have been eliminated by a curative instruction. See *id*.

Finally, defendant claims that the prosecutor appealed to the jury's sympathy in her closing argument by stating that the victim's sense of safety and security had been taken from her because of the attack. The prosecutor may not appeal to the jury to sympathize with the victim. See *People v Unger*, 278 Mich App 210, 237; 749 NW2d 272 (2008). An instruction to the jury that it should not be influenced by sympathy can help alleviate the prejudice of an improper comment. *People v Watson*, 245 Mich App 572, 592; 629 NW2d 411 (2001). Although defendant did not object to the prosecutor's statement, the trial court instructed the jurors that they must not let sympathy or prejudice influence their decision. Even if the prosecutor improperly appealed to the sympathy of

-6-

the jury, defendant has failed to establish that the instruction to the jury did not cure any prejudice, and he has failed to show that he was prejudiced by the prosecutor's comment. See *id*.

In addition to purported prosecutorial misconduct and errors in the admission of testimony, defendant asserts that it was unfairly prejudicial to require him to remove his facemask at certain points in the trial. Defendant emphasizes that his complaint is not with the removal of the mask, as he admits that it was normal for defendants to appear in court without any facial covering prior to the COVID-19 pandemic. But defendant complains that "it only occurred during isolated times when the most damaging evidence or arguments were being presented." The fundamental problem with that argument is that defendant could have removed his mask at other times during the trial if he so desired. Moreover, although defendant contends that the timing of his mask removal put the jury at risk of making "a connection based on something other than reasonable inferences from the evidence," it is entirely unclear to this Court how that unfairly prejudiced defendant.

Having determined that defendant's claims of error lack merit, we will nonetheless analyze his argument that his convictions on Counts I through IV rest on insufficient evidence. "This Court reviews de novo defendant's challenge to the sufficiency of the evidence." *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). "We view the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime to have been proved beyond a reasonable doubt." *Id*. "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). "Conflicts in the evidence must be resolved in favor of the prosecution." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010) (quotation marks, citation, and alteration omitted). In addition, "this Court must defer to the fact-finder's role in determining the weight of the evidence and the credibility of the witnesses." *Id*.

Defendant's sole challenge to the sufficiency of the evidence is straightforward: there was insufficient evidence to establish that he was the person who attacked the victim. "[I]dentity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Thus, we need not analyze the specific elements of each of Counts I through IV. Instead, this challenge requires this Court to determine if there was sufficient evidence presented to the jury to establish beyond a reasonable doubt that defendant was the person who committed the attack on the victim. We find that there was sufficient evidence to establish that fact.

The evidence demonstrated that defendant used the victim's debit card within roughly 24 hours of the attack. The evidence also established that defendant was found in possession of a gun that was missing the same parts that had broken off of the gun used in the attack when the assailant struck the victim with the gun. On appeal, defendant puts forth an alternative defense: it's possible he could have purchased the gun and the stolen debit card at some time after the attack took place, meaning his possession of those items after the crime occurred provides insufficient evidence that he was the assailant who robbed the victim. "[T]he prosecution need not negate every reasonable theory consistent with the defendant's innocence, but need merely introduce evidence sufficient to convince a reasonable jury in the face of whatever contradictory evidence the defendant may provide." *People v Hardiman*, 466 Mich 417, 424; 646 NW2d 158 (2002). Viewed in the light most favorable to the prosecution and drawing all reasonable inferences and making all credibility determinations in favor of the jury's verdict, the evidence was sufficient to allow a rational trier of

fact to find, beyond a reasonable doubt, that defendant committed the attack. See *Meissner*, 294 Mich App at 452; *Nowack*, 462 Mich at 400.

## D. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant asserts that defense counsel rendered ineffective assistance on several grounds. Whether a defendant has been deprived of effective assistance of counsel presents a mixed question of fact and constitutional law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). The trial court's factual findings are reviewed for clear error, but its constitutional determinations are reviewed de novo. *Id.* "Clear error exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *People v Anderson*, 284 Mich App 11, 13; 772 NW2d 792 (2009) (quotation marks and citation omitted). Because no *Ginther*[3] hearing was held, this Court's review is limited to errors that are apparent on the record. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

"Both the Michigan and the United States Constitutions require that a criminal defendant enjoy the assistance of counsel for his or her defense." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012), citing US Const, Am VI; Const 1963, art 1, § 20. "In order to obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. Effective assistance of counsel is presumed, and the defendant bears a heavy burden to prove otherwise. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). "[A] defendant must overcome the strong presumption that his counsel's action constituted sound trial strategy under the circumstances." *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000). "If this Court can conceive of a legitimate strategic reason for trial counsel's act or omission, this Court cannot conclude that the act or omission fell below an objective standard of reasonableness." *People v Haynes*, 338 Mich App 392, 429-430; 980 NW2d 66 (2021).

Defendant contends that defense counsel performed deficiently by failing to object to some of the prosecutor's leading questions and "editorial comments." He acknowledges that his defense attorney did object to some of the prosecutor's leading questions but the objections were overruled. The trial court said that it would give both parties "a little leeway" to ask leading questions because that would move the trial along. In light of the trial court's position, it would have been futile for defense counsel to object to every leading question. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Moreover, defendant has not established that there is a reasonable probability that the outcome of the trial would have been different had defense counsel made those objections. See *Trakhtenberg*, 493 Mich at 51.

An objection to the admission of Facebook photographs based on a lack of foundation also would have been futile. Under MRE 901(a), "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." According to MRE 901(b)(1), the testimony

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

of a witness who has knowledge "that a matter is what it is claimed to be" is an example of proper authentication or identification. "A proper foundation for the admission of photographs is made if someone who is familiar from personal observation of the scene or person photographed testifies that the photograph is an accurate representation of the scene or person." *In re Robinson,* 180 Mich App 454, 460; 447 NW2d 765 (1989). In this case, the lead detective—who had interviewed defendant and was familiar with his appearance—testified that the Facebook photographs were of defendant. Although the lead detective did not expressly state that the Facebook photographs were "an accurate" depiction of defendant, the detective's repeated testimony that the photographs were of defendant was sufficient to establish a proper foundation for their admission.

Defendant further contends that defense counsel was ineffective for failing to object to the opinion testimony of Det. Stolsonburg that the individual in the store videos was defendant. But defendant concedes that, based on the evidence presented, there was "little room to argue that a rational jury could not conclude on the record" that defendant was the individual seen in the video using the victim's debit card. Therefore, defendant has failed to establish a reasonable probability that the outcome of the trial would have been different if defense counsel had made that objection. See *Trakhtenberg*, 493 Mich at 51.

Defendant insists that his defense counsel rendered deficient assistance by asking the lead detective his opinion about who assaulted the victim and by questioning another officer "about the image comparisons that occurred after the videos were obtained by law enforcement." Decisions regarding what evidence to present, and how to question a witness, are presumed to be matters of trial strategy. *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004); *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). This Court will not substitute its judgment for that of counsel concerning matters of trial strategy, nor will we assess counsel's competence with the benefit of hindsight. See *Payne*, 285 Mich App at 190. The questions from defense counsel that defendant now contests appear to be part of defense counsel's strategy of showing that the police concluded that defendant was the victim's assailant and then looked for evidence to confirm their theory. And although defendant argues that this strategy was not supported by evidence, defendant has failed to establish that there is a reasonable probability that, but for this conduct from defense counsel, the outcome of the trial court would have been different. *Trakhtenberg*, 493 Mich at 51. For example, the questions defendant identifies in his argument on appeal did not prevent defense counsel from also highlighting a potential weakness in the prosecution's case: that no eye witness identified defendant as the individual who attacked the victim.

Defendant also contends that defense counsel rendered deficient performance by failing to move to suppress defendant's DNA on the basis of "a purportedly invalid search warrant" prior to trial. The record shows that defense counsel did object to the validity of the execution of the search warrant during the trial. The trial court treated that objection as a motion to suppress and denied the motion. Defendant's challenge on appeal appears to focus on the timing of this objection, but defendant has failed to establish that there is a reasonable probability that the outcome would have been different if defense counsel had pursued that motion earlier in the case. There is nothing in the record that suggests that the trial court would have granted the motion to suppress if it had been brought before trial. Moreover, as we explain later in this opinion, exclusion of the evidence was not the proper remedy for the warrant deficiency identified by defendant.

Defendant further contends that defense counsel rendered deficient performance by failing to follow through on a subpoena to KDPS as to Lt. Treppa's inappropriate trial testimony. Defense counsel explained to the trial court on the day after Lt. Treppa testified that counsel had "requested an opportunity to send a subpoena over to the [KDPS] in regards to [the officer] and previous cases that he's participated in to see if this is a habit of his and letting information out that is totally inappropriate for that particular case and those specific charges." Defendant has not suggested, let alone shown, that there is a reasonable probability that the outcome of the trial would have been different had defense counsel followed up on the subpoena.

Finally, defendant insists that defense counsel's trial strategy of arguing that police latched onto defendant as the assailant without conducting a proper investigation was unreasonable under the circumstances. Defendant contends that this strategy did not align with the fact that defendant did not become a suspect until he was found with a gun that had a damaged magazine one month after the armed robbery. Defendant further impugns defense counsel's trial strategy by contending that defense counsel failed to investigate and present evidence of the existence of a street market for handguns and debit cards. Decisions about the evidence to present are presumed to be matters of trial strategy. *Dixon*, 263 Mich App at 398. Here, defense counsel sought to create reasonable doubt about how defendant obtained the victim's debit card through cross-examination and closing argument. Counsel elicited from the lead detective testimony that defendant never admitted that he had a stolen debit card and that the detective did not know how defendant came into possession of the card. The detective did not know if somebody sold it to defendant, or gave it to him, or he found it. Defense counsel argued in closing that when law-enforcement officers saw defendant's signature on the receipts for purchases that were made with the victim's debit card, they concluded that defendant committed the armed robbery and then looked for evidence to support their theory. Counsel argued that people buy stolen debit cards every day; defendant could have purchased the debit card not knowing it was stolen, and then used it at the three stores. Otherwise, the fact that defendant signed his own name to a card that he knew was stolen did not make any sense.

As for the handgun, defense counsel attempted to create reasonable doubt by questioning whether the gun belonged to defendant at the time of the robbery. Counsel stressed the testimony from the expert in DNA analysis that defendant's DNA was not found on the gun parts recovered at the scene of the robbery, that the victim's DNA was not detected on the handgun that turned up later near defendant, and that DNA could remain on a gun for years. In addition, defense counsel highlighted testimony that the gun was found on a different floor of the apartment building than where defendant was found, and that the retired KDPS crime-laboratory specialist did not know if magazines from different nine-millimeter handguns were interchangeable. In other words, defense counsel's strategy was reasonably supported by evidence adduced at trial. Defense counsel sought to create reasonable doubt by providing a plausible explanation for why defendant had the victim's debit card and by using testimony elicited on cross-examination to put distance between defendant and the gun. Accordingly, on this record, defendant has failed to rebut the presumption of effective assistance. See *Rockey*, 237 Mich App at 76. Having failed to prove any instance in which defense counsel's performance fell below an objective standard of reasonableness or that, but for counsel's deficient performance, there is a reasonable probability that the outcome of defendant's trial would have been different, defendant's claim of ineffective assistance must fail.

-10-

## E. SUPPRESSION OF DNA EVIDENCE

In a Standard 4 brief, defendant asserts that the trial court abused its discretion by denying his motion to suppress the DNA collected from him. "A trial court's ruling on a motion to suppress evidence is reviewed for clear error, but its conclusions of law are reviewed de novo." *Unger*, 278 Mich App at 243. "A finding is clearly erroneous when it leaves this Court with a definite and firm conviction that the trial court made a mistake." *People v Campbell*, 329 Mich App 185, 192-193; 942 NW2d 51 (2019) (quotation marks and citation omitted).

Under MCL 780.654(2), "the grounds or the probable or reasonable cause" for the issuance of a search warrant must be stated either in the warrant or in a copy of the affidavit attached to the warrant. When an officer takes property or other things in the execution of the search warrant, the officer "shall give to the person from whom or from whose premises the property was taken a copy of the warrant . . . ." MCL 780.655(1). But an exception to this rule is found in MCL 780.654(3), which authorizes a magistrate to order that the affidavit be suppressed and not given to the person whose property was seized until that person is charged with a crime "[u]pon a showing that it is necessary to protect an ongoing investigation or the privacy or safety of a victim or witness . . . ." MCL 780.654(3). "[W]here a supporting affidavit is used in lieu of a statement of probable cause in the warrant . . . then a copy of the affidavit becomes part of the 'copy of the warrant' that must be provided or left pursuant to MCL 780.655." *People v Garvin*, 235 Mich App 90, 99; 597 NW2d 194 (1999).

In *People v Sobczak-Obetts*, 463 Mich 687, 710; 625 NW2d 764 (2001), our Supreme Court held that suppression of evidence seized under a properly issued search warrant was not the proper remedy for an officer's failure to provide the subject of the search with a copy of the search warrant affidavit after execution of the warrant, as required by MCL 780.655. The Supreme Court held that nothing in that statute provided a basis to infer that it was the Legislature's intent to apply the "drastic remedy of exclusion" to a violation of that statute. *Sobczak-Obetts*, 463 Mich at 710. The Supreme Court reasoned that, "[b]ecause the exclusionary rule pertains to evidence that has been illegally *seized,* it would not be reasonable to conclude that the Legislature intended to apply the rule to a violation of the postseizure, administrative requirements of [MCL 780.655]." *Id*.

Here, officers used an affidavit to obtain a search warrant for defendant's DNA, and when they executed the warrant, they left the search warrant, but not the affidavit, with defendant. There is no evidence that the prosecution asked a magistrate to suppress the affidavit or that a magistrate issued an order suppressing the affidavit. Consequently, the officers should have given defendant a copy of the affidavit in accordance with MCL 780.655. See *Garvin*, 235 Mich App at 99.

But the suppression of the DNA evidence obtained from defendant is not the proper remedy for a violation of the administrative requirements of MCL 780.655. See *Sobczak-Obetts*, 463 Mich at 710. Defendant does not argue, nor is there any evidence, that the search warrant was defective. The detective who obtained the warrant testified that he submitted an affidavit and a search warrant to the appropriate authority. The authorizing signature on the warrant indicates that the signer was satisfied that the search warrant and the affidavit were supported by probable cause. There is no evidence of any defect in the seizure other than a violation of MCL 780.655, and a violation of the administrative provisions of MCL 780.655 does not trigger application of the exclusionary rule. See *id*. Hence, the trial court did not err by denying defendant's motion to suppress his DNA.

Affirmed.

/s/ Michael J. Riordan
/s/ Jane E. Markey
/s/ Christopher P. Yates