*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BRANDON JOHN-ALLEN PEARCE,

        Defendant-Appellant.

UNPUBLISHED
January 24, 2025
10:01 AM

No. 365626
Crawford Circuit Court
LC No. 2021-004879-FC

Before: M. J. KELLY, P.J., and LETICA and WALLACE, JJ.

PER CURIAM.

Following a jury trial, defendant, Brandon Pearce, was found guilty of possession of methamphetamine, MCL 333.7403(2)(b)(*i*). The trial court sentenced him as a fourth-offense habitual offender, MCL 769.12, to serve 30 months to 40 years' imprisonment. For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

According to Pearce, he and his girlfriend, Tiffany Kage, got into an argument over her use of drugs. He testified that he told her that if she did not stop using drugs, he would report her to Children's Protective Services. Following the argument, Kage contacted the police and reported that, two days earlier, Pearce had 10 grams of methamphetamine in his upstairs bedroom and that she and he had snorted methamphetamine that day. She then called Pearce and warned him not to return home. The police obtained a search warrant and executed it that night. In the upstairs bedroom, there was a sign with Pearce's name on it. Further, the police found crystalized residue inside four pipers and two containers. The residue tested positive for methamphetamine.

At trial, Pearce's landlord testified that there were two apartment units in the house. He stated that, at the time that the police executed the search warrant, Pearce was living in the downstairs, not the upstairs apartment. Likewise, Pearce testified that he had not lived in the upstairs bedroom since 2020. He explained that, although he still kept some of his belongings in the room, he had been living in the downstairs apartment. He also denied having a connection to or knowledge of the methamphetamine that the police found in the search. A police officer, however, testified that the room upstairs did not have female clothing in it. Further, the downstairs

-1-

unit was dark, unlit, and appeared to be "kind of like a partially finished basement." It did not appear as if a person was living down there. The officer further did not recall seeing a bed.

## II. JURY INSTRUCTIONS

### A. STANDARD OF REVIEW

Pearce argues that reversal is required because the trial court refused to give the addict-informer jury instruction. We review de novo claims of instructional error. *People v Kurr*, 253 Mich App 317, 327; 654 NW2d 651 (2002).

### B. ANALYSIS

"Instructional errors that directly affect a defendant's theory of defense can infringe a defendant's due process right to present a defense." *People v Kurr*, 253 Mich App 317, 326-327; 654 NW2d 651 (2002). "When a defendant requests a jury instruction on a theory or defense that is supported by the evidence, the trial court must give the instruction." *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002). "The determination whether a jury instruction is applicable to the facts of the case lies within the sound discretion of the trial court." *People v Ho*, 231 Mich App 178, 189; 585 NW2d 357 (1998). "[I]f an applicable instruction was not given, the defendant bears the burden of establishing that the trial court's failure to give the requested instruction resulted in a miscarriage of justice." *Riddle*, 467 Mich at 124. "The defendant's conviction will not be reversed unless, after examining the nature of the error in light of the weight and strength of the untainted evidence, it affirmatively appears that it is more probable than not that the error was outcome determinative." *Id*. at 124-125.

The model addict-informer jury instruction provides as follows:

> (1) You have heard the testimony of _____, who has given information to the police in this case. The evidence shows that [he / she] is addicted to a drug, namely _____.

> (2) You should examine the testimony of an addicted informer closely and be very careful about accepting it.

> (3) You should think about whether the testimony is supported by other evidence, because then it may be more reliable. However, there is nothing wrong with the prosecutor using an addicted informer as a witness. You may convict the defendant based on such a witness's testimony alone if you believe the testimony and it proves the defendant's guilt beyond a reasonable doubt.

> (4) When you decide whether to believe [*name witness*], consider the following:

> (a) Did the fact that this witness is addicted to drugs affect [his / her] memory of events or ability to testify accurately?

(b) Does the witness's addiction give [him / her] some special reason to testify falsely?

[(c) Does the witness expect a reward or some special treatment or has (he / she) been offered a reward or been promised anything that might lead (him / her) to give false testimony?

(d) Has the witness been promised that (he / she) will not be prosecuted for any charge, or promised a lighter sentence or allowed to plead guilty to a less serious charge? If so, could this have influenced (his / her) testimony?

(e) Was the witness's testimony falsely slanted to make the defendant seem guilty because of the witness's own interests or to remove suspicion from others, or because (he / she) feared retaliation from others in drug trafficking?

(f) Was the witness affected by the fear of being jailed and denied access to drugs?

(g) Does the witness have a past criminal record?]

(5) In general, you should consider an addicted informer's testimony more cautiously than you would that of an ordinary witness. You should be sure you have examined it closely before you base a conviction on it. [M Crim JI 5.7.]

The credibility of addict-informers is a jury question, and "the jury may convict on such testimony alone." *People v Atkins*, 397 Mich 163, 172; 243 NW2d 292 (1976). In *Atkins*, the Supreme Court allowed the use of an addict-informer jury "instruction where the uncorroborated testimony of an addict-informer is the only evidence linking the accused with the alleged offense." *Id*. at 170.

In *People v Griffin*, 235 Mich App 27, 40; 597 NW2d 176 (1999), overruled in part on other grounds by *People v Thompson*, 477 Mich 146, 148; 730 NW2d 708 (2007), the defendant argued that the addict-informer instruction should have been given. In that case,

> the prosecutor elicited from the informant that he had been arrested twice for selling drugs, that he once used illicit drugs four or five times a week, but that he was not using drugs at the time of trial, and defense counsel elicited from the informant on cross-examination that he had had a crack cocaine habit for five years. [*Id*. at 40.]

This Court held that "[a]lthough this evidence may raise some suspicions concerning the informant's drug habits over the recent past, it falls short of clearly indicating that he was an addict at the time in question." *Id*. The Court concluded that "[b]ecause the indications that the informant was addicted to drugs at the time in question were not conclusive, the jury was well apprised of the informant's criminal background concerning drugs, and the informant's testimony was corroborated by other evidence, the trial court did not abuse its discretion in declining to provide the jury with a special instruction concerning the credibility of an addict-informer." *Id*. at 40-41.

In this case, there is evidence that Pearce threatened to report Kage to CPS if she did not stop using drugs. He claimed to have only recently discovered that she was using drugs. Further,

Kage admitted to using methamphetamine with Pearce on the day that they had that argument. Thus, like the informant in *Griffin*, the evidence falls short of clearly indicating that Kage was an *addict*. Furthermore, Kage's information was independently corroborated. She reported that Pearce had methamphetamine in an upstairs bedroom, and when the police searched the residence, they discovered six items containing methamphetamine residue. Although Pearce claimed to be living in the downstairs unit and to only be using the bedroom for storage, there was circumstantial evidence to suggest that it was his room and that it contained his belongings.

Because there was no sufficient evidence to establish that Kage was an addict and because her information was corroborated, the trial court did not abuse its discretion by declining to give the addict-informant jury instruction.

## II. USE OF PRIOR FELONY CONVICTIONS TO ENHANCE SENTENCE

### A. STANDARD OF REVIEW

Pearce's prior felony convictions were used to calculate his prior record variable (PRV) and were used to support the habitual-offender enhancement to his guidelines range. On appeal, he contends using his prior felony convictions to support two separate enhancements to his sentence guideline range is constitutionally improper. "Questions of constitutional law are reviewed by this Court de novo." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Likewise, we review de novo the interpretation of a statute. *People v Fetterley*, 229 Mich App 511, 525; 583 NW2d 199 (1998).

### B. ANALYSIS

In *Fetterley*, the trial court had enhanced the defendant's sentences under both MCL 769.11(1)(a) (the habitual-third-offender enhancement) and MCL 333.7413(2) (the controlled substance provisions of the Public Health Code). *Fetterley*, 229 Mich App at 525. After reviewing the pertinent statutory language and relevant caselaw, this Court concluded that "the Legislature did not intend that sentences for subsequent controlled substance offenses be quadrupled by enhancement under both the habitual offender provisions and the controlled substance enhancement provision." *Id*. at 540.

On appeal, Pearce states that the statutory scheme that allows his prior felony convictions to be used to calculate both his PRVs and his habitual-offender status "offends fundamental fairness." In support, he cites both the Fourteenth Amendment to the United States Constitution and the due-process clause of the Michigan Constitution. He also directs this Court to *Fetterley* for the proposition that "double counting" convictions in order to enhance a defendant's sentence "can be impermissible." However, beyond citing those very general principles, Pearce offers no rationale as to why it should be impermissible to count a defendant's prior felony convictions both when establishing his sentencing guidelines range, i.e., when scoring an offender's PRVS, and when enhancing that sentencing guidelines range using the offender's status as a habitual offender. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d

480 (1998). Thus, by failing to provide more than a cursory analysis of this issue on appeal, Pearce has waived it.

Regardless, even if the issue was properly presented, we would not conclude that Pearce is entitled to relief. His prior felony convictions were not used to twice enhance his sentence. Rather, his unenhanced sentence guidelines range was calculated—as required by MCL 777.21(3)—by first determining his "offense category, offense, class, offense variable level, and prior record variable level based on the underlying offense." It was only after his *unenhanced* sentencing guidelines range was determined that Pearce's prior felony convictions were used to enhance his sentence as a result of his being a habitual offender. Thus, only one enhancement of his sentence actually occurred. Further, unlike the double-enhancement in *Fetterley*, which was not supported by the statutory language, the use of Pearce's prior felony convictions to calculate his base sentence guidelines range and to enhance it because he was a habitual offender is contemplated by the relevant statutory language. Pearce's claim that his prior felony convictions were twice used to enhance his sentence is, therefore, without merit.

## IV. INACCURATE SENTENCING INFORMATION

Pearce next argues that he is entitled to resentencing because the trial court relied upon inaccurate information when it sentenced him. "It is vitally important to the defendant and to the ends of justice that the sentence be based upon accurate information." *People v Malkowski*, 385 Mich 244, 249; 188 NW2d 559 (1971). "[A] sentence is invalid if it is based on inaccurate information." *People v Miles*, 454 Mich 90, 96; 559 NW2d 299 (1997).

Pearce contends that the trial court assumed that Pearce would be eligible for "boot camp"[1] when it sentenced him. However, after sentencing, it was determined that because Pearce was a fourth-offense habitual offender, he was not eligible for boot camp. At sentencing, Pearce's lawyer advocated for a sentence that would allow for boot camp, and the trial court indicated that such a program might benefit Pearce. However, when imposing a 30-month minimum sentence, the trial court stated that "this sentence, if you're *otherwise eligible* would make you eligible for the boot camp program." Thus, it is apparent that the court understood that simply imposing a 30-month minimum sentence would not guarantee Pearce's eligibility for boot camp. Rather, the court understood that, in addition to that, he would have to be otherwise eligible for the program. Thus, notwithstanding that Pearce was ineligible because he was a fourth-offense habitual offender, the record does not reflect that Pearce was sentenced based upon inaccurate information.

Pearce also requests a remand to allow the trial court to reconsider whether to apply the habitual-offender enhancement. He contends that the trial court had the discretion to ignore the habitual-offender statute when crafting his sentence. His claim is without merit. MCL 769.12(1) provides that a trial court must apply the habitual-offender enhancement to a person convicted of

---

[1] MCL 791.234a(2)(h)(*viii*) provides that if a prisoner "was punished" under a habitual-offender-statute, he or she is not "eligible for placement in a special alternative incarceration unit." "[B]oot camp" refers to a form of special alternative incarceration unit. See *People v Hite*, 200 Mich App 1, 2-3; 503 NW2d 692 (1993).

the requisite number of prior felonies. As a result, the trial court lacks the discretion to take the action that Pearce requests.

Pearce's claim that his lawyer provided ineffective assistance by failing to ask the court to exercise its discretion to not apply the habitual-offender statute is without merit for the same reason. See *People v Putman*, 309 Mich App 240, 245; 870 NW2d 593 (2015) (indicating that a lawyer is not ineffective for failing to raise a meritless or futile argument).

## V. PROPORTIONALITY

### A. STANDARD OF REVIEW

Finally, Pearce argues that his within-guidelines sentence was not proportional. "[T]he proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the 'principle of proportionality' set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), 'which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017). An abuse of discretion exists when the trial court's decision falls outside the range of principled outcomes. *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010).

### B. ANALYSIS

"[A]ppellate courts must review all sentences for reasonableness, which requires the reviewing court to consider whether the sentence is proportionate to the seriousness of the matter." *People v Posey*, 512 Mich 317, 352; 1 NW3d 101. In "all appellate challenges to within-guidelines sentences," the sentence is given a nonbinding presumption that it is proportionate. *Id.* at 357. "Defendant bears the burden of overcoming the presumption." *Id.* "Because the guidelines embody the principle of proportionality and trial courts must consult them when sentencing, it follows that they continue to serve as a 'useful tool' or 'guideposts' for effectively combating disparity in sentencing." *People v Dixon-Bey*, 321 Mich App 490, 524-525; 909 NW2d 458 (2017).

Pearce's minimum guidelines range was 5 to 46 months. MCL 777.65; MCL 777.21(3)(c). The application of the habitual-offender enhancement set his maximum possible sentence as life. MCL 769.12(1)(b); MCL 333.7403(2)(b)(*i*). He was sentenced within those guidelines, to 30 months to 40 years' imprisonment. Therefore, Pearce must overcome the presumption that his within-guidelines sentence is proportional. See *Posey*, 512 Mich at 357.

Pearce contends that he was convicted based upon his possession of a very small amount of methamphetamine residue. He also notes that he apologized to the trial court and expressed a willingness to fix his drug-abuse issue. But the small amount of methamphetamine was only the remnant still found in the home, after Kage testified that Pearce previously had possessed, and used, much more. Further, there are indications that Pearce had been using methamphetamine since 2020. He had been offered—and even required—to treat his substance abuse issues in previous adjudications, but did not comply. His criminal history was lengthier than he or his lawyer attempted to present at the sentencing hearing. It included a number of incidents before his drug use supposedly started in 2020. The trial court accepted that Pearce was "looking into

avenues to address whatever substance abuse problems that you have." But it also correctly focused on how relatively minor past sentences for Pearce had done nothing to prevent his continued criminal activity. Previous sentences such as incarceration in jail and probation had been ineffective to deter him. The trial court chose a minimum sentence near the middle of the minimum guidelines range. Its reasoning was logical, and accurately described the offense and Pearce's history. Given this record, Pearce has not overcome the presumption of proportionality.

Affirmed.

/s/ Michael J. Kelly
/s/ Anica Letica
/s/ Randy J. Wallace